**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA ("HALYA") SLINKO-SHEVCHUK, | Civil Action No.: 13-5633 (CCC-MF) |
| Plaintiff, | |
| v. | **OPINION** |
| OCWEN FINANCIAL CORPORATION, *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant Ocwen Financial Corporation ("OFC") to dismiss the Amended Complaint of Plaintiff Anna "Halya" Slinko-Shevchuk ("Plaintiff"). ECF No. 22. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, OFC's motion to dismiss is granted. The Court will dismiss Counts One, Two and Three of the Amended Complaint without prejudice, and Count Four of the Amended Complaint will be dismissed with prejudice.

## II. BACKGROUND

On September 20, 2013, Plaintiff filed the Complaint in the instant action against Defendants Marathon Banking Corporation ("Marathon") and OFC. ECF No. 1. In Plaintiff's original Complaint, she alleged that several years after her father's death, she found a passbook showing that on March 21, 1988, her father, Nikifor Slinko, and her mother, Anna Slinko, had purchased an automatically renewing Certificate of Deposit ("CD"), with the account number ending -1017 (the "Account"), at a branch of the Berkeley Federal Savings Bank in Fort Lee, New

1

Jersey. Compl. ¶¶ 17-18. According to the Complaint, the original amount of the CD was $1,000, with a 7.99% interest rate to be compounded and credited monthly, and it was scheduled to mature on March 21, 1991. Id. at ¶ 19. Plaintiff alleged that by March 21, 1993 (the Account had been renewed in 1991), the passbook showed that the balance in the Account was $70,000, and that after the last transaction reflected in the passbook, "the account-holders on the Account, Ni[k]ifor and Ann[a] Slinko, did not make a withdrawal on the account, nor did anyone else, including Plaintiff." Id. at ¶¶ 22-25.

According to the Complaint, by the time Plaintiff discovered the passbook, Berkeley Federal Bank & Trust had merged into Ocwen Federal Bank FSB, a subsidiary of Defendant OFC, and changed its name to Ocwen Federal Bank, FSB; then, "Ocwen Federal Bank sold all of its deposit accounts, including those held in New Jersey branches, to Marathon Bank of New York." Id. at ¶¶ 14-16. Because Ocwen Federal Bank had closed, Plaintiff tried to locate the funds from the Account with the New Jersey Treasury Department's Unclaimed Property Administration, which informed her on December 22, 2010 that they had no record of an escheat of the Account or unclaimed funds in the name of Anna or Nikifor Slinko. Id. at ¶¶ 26-27.

Plaintiff then demanded payment from Marathon in September 2011, but Marathon denied Plaintiff's request, advising her that it did not maintain and never maintained the Account in question, and denying that the Account was included in its acquisition of Ocwen Federal Bank FSB. Id. at ¶ 29. Plaintiff subsequently demanded, and was refused, payment from Defendant OFC, which Plaintiff contends is the parent company to Ocwen Federal Bank FSB. Id. at ¶ 30-31. Plaintiff then brought the instant lawsuit against Defendants Marathon and OFC, alleging breach of contract, common law conversion, breach of the implied covenant of good faith and fair dealing and violation of New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*

Defendants Marathon and OFC each filed separate motions to dismiss the Plaintiff's Complaint, and the Court granted those motions in an opinion dated June 9, 2014 (the "First Dismissal Op."). See ECF No. 15. The Court's opinion was based upon a presumption contained in a New Jersey statutory provision, which states that "[i]f the presentation of [a] passbook is made by a successor of the owner more than 15 years after the date of the passbook, there shall be a rebuttable presumption that the account was paid in full to or on behalf of the owner or to a successor of the owner." First Dismissal Op. 4-5 (quoting N.J. Stat. Ann. § 17:16W-4(a)). Because Plaintiff had not pleaded any facts in her Complaint that showed that she would be capable of rebutting this presumption at a later stage in the litigation, the Court dismissed Plaintiff's Complaint without prejudice. First Dismissal Op. 4-5.

Plaintiff then filed an Amended Complaint on July 8, 2014. ECF No. 17. In the Amended Complaint, Plaintiff contends that "[a]t the time of the filing of the original Complaint, Plaintiff incorrectly understood herself to be a successor to the Account at issue," but "[u]pon further inspection," Plaintiff discovered that she is actually an owner of the Account at issue, with an interest in the Account through a right of survivorship. Am. Compl. ¶ 2. Plaintiff explains that the confusion over her ownership of the Account resulted from the fact that her legal name is "Anna," while "Halya" is the "Ukranian name by which [she is] commonly called." Slinko-Shevchuk Cert. ¶ 3, ECF No. 17-2. Plaintiff initially believed her mother to be the "Anna Slinko" referenced in the passbook at issue (her mother's name is Julianna) but upon further inspection, Plaintiff realized that she is the "Anna Slinko" who had joint ownership of the Account with her father. Am. Compl. ¶ 2. Plaintiff further states, in her certification submitted with the Amended Complaint: "As an owner of the Account, I hereby certify pursuant to N.J.S.A. 17:16W4(c) that neither my father nor I ever received payment of the Account or transferred the Account, my father

or me." Slinko-Shevchuk Cert. ¶ 32. The statutory provision to which Plaintiff refers states, in relevant part:

> If the presentation of the passbook is made by the owner, and the presentation is accompanied by a sworn certificate of the owner that the owner never received payment of the account nor transferred the account, there shall be a rebuttable presumption that the account exists and that the financial institution is holding the account for the benefit of the owner.

N.J. Stat. Ann. § 17:16W-4(c). Finally, the Amended Complaint contains additional facts regarding the history of the Account at issue: Plaintiff now alleges that her father and her mother, Julianna Slinko, had opened a CD account ending in -0464 in the amount of $60,000 in 1984, and that by March 16, 1988, the balance of the -0464 account was $66,166.89; after withdrawing the interest from the -0464 account, Plaintiff contends, her father opened a new CD account, the Account at issue (ending in -1017), with Plaintiff as co-owner and with a principal balance of $66,000 (not $1,000 as originally alleged in the initial Complaint). Am. Compl. ¶¶ 18-21. Plaintiff contends that the last passbook relating to the Account at issue bears no stamp indicating that it was cancelled, the balance of the Account was $70,000 as of the date of the last entry in the passbook, and that the Account balance was never paid in full to its owners, Plaintiff and her father, Nikifor Slinko. Id. at ¶¶ 29-42.

OFC filed the instant motion to dismiss the Amended Complaint on August 5, 2014. ECF No. 22. OFC argues that the Amended Complaint (or certain claims therein) should be dismissed because: (1) Plaintiff's claims for breach of contract, conversion, and violation of the NJCFA are time-barred; (2) the presumption provided in N.J. Stat. Ann. § 17:16W-4(a) still defeats Plaintiff's claims; (3) Plaintiff's conversion and NJCFA claims are barred by the "economic loss doctrine"; (4) Plaintiff's NJCFA claim is insufficiently pled with respect to OFC; (5) Plaintiff's breach of contract claim is insufficiently pled; and (6) Plaintiff's breach of the implied covenant of good faith and fair dealing claim is insufficiently pled. Plaintiff has opposed the motion. ECF No. 27.

### III. DISCUSSION

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, district courts must first "accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009). Then, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 679). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). Further, an amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013) (quoting New Rock Asset Partners, LP v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1504 (3d Cir. 1996)).

### A. Presumption that the Account was Paid in Full[1]

As a preliminary matter, OFC argues, as both Defendants argued in their motions to dismiss the initial Complaint, that the Court should dismiss the Amended Complaint based on the following statutory presumption: "If the presentation of [a] passbook is made by a successor of the owner more than 15 years after the date of the passbook, there shall be a rebuttable presumption

---

[1] Both parties restrict their substantive arguments to New Jersey law, indicating agreement that New Jersey substantive law should apply to this diversity action. The Plaintiff is a citizen of New Jersey and the Account at issue was opened in New Jersey. Am. Compl. ¶¶ 2, 21. Thus, the Court has no cause to challenge *sua sponte* the choice of New Jersey law. See Schiavone Const. Co. v. Time, Inc., 735 F.2d 94, 96 (3d Cir. 1984).

5

that the account was paid in full to or on behalf of the owner or to a successor of the owner." N.J. Stat. Ann. § 17:16W-4(a). Plaintiff's Amended Complaint states, however, that Plaintiff is an owner of the account, rather than a successor of the owner. Slinko-Shevchuk Cert. ¶¶ 3-4.

Though OFC states in a footnote that "[n]otably, in the original Complaint, Plaintiff represented that she was the beneficiary of the account," and yet "[n]ow, she claims she is the owner of the account," the Court may not reject the facts in the Amended Complaint simply because they are contrary to facts in the original Complaint. See West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 173 (3d Cir. 2013). Thus, the Court will not dismiss the Amended Complaint based on the statutory presumption upon which OFC relies, as it does not apply to the facts in the Amended Complaint.

### B. Liability of Parent Corporation

In seeking dismissal of Plaintiff's breach of contract claim, OFC argues that "OFC was not the contracting party with Plaintiff . . . and OFC—which is not a bank—is not liable for its subsidiaries just because Plaintiff says it is so." Def.'s Br. 18. Plaintiff responds that OFC's contractual obligations arise out of the creditor-debtor relationship established between the bank and depositor, a contractual relationship evidenced by the passbook, and that OFC breached its contractual obligations by failing to pay on presentation of the passbook. Opp. Br. 6. Plaintiff further argues that OFC's "attempt[] to disclaim liability on the basis that Ocwen Federal Bank, FSB was debanked in 2005 and its assets were acquired by Marathon" raises an issue of fact not properly resolved on a motion to dismiss. Id. at 7.

The elements of a breach of contract claim under New Jersey law are (1) a valid contract between the parties, (2) that plaintiff performed her contractual duties, (3) that defendant breached the contract, and (4) that the breach resulted in damages. Federico v. Home Depot, 507 F.3d 188,

203 (3d Cir. 2007). "The relationship between a depositor and a bank is one of creditor and debtor, and their rights and liabilities depend upon the contract between them," which includes "rules printed in the passbook." Forbes v. First Camden Nat'l Bank & Trust Co., 95 A.2d 416, 418 (N.J. Super. Ct. App. Div. 1953); see also Griffith v. Mellon Bank, NA, 173 F. App'x 131, 133-34 (3d Cir. 2006) ("A certificate of deposit consists of an acknowledgment by a bank that a sum of money has been received with a promise to repay. Thus a certificate of deposit is a debt."); Pagano v. United Jersey Bank, 648 A.2d 269, 272 (N.J. Super. Ct. App. Div. 1994) ("[I]t is clear that the relationship between the depositor and bank is that of creditor and debtor and that the passbook constitutes both the instrument of obligation and *prima facie* evidence thereof.").

Plaintiff contends that a contract existed between herself and her father and Berkeley Federal Savings Bank, as evidenced by the passbook for the Account at issue. Am. Compl. ¶ 21. Pursuant to that contract, Berkeley Federal Savings Bank was obligated to pay its debt to the account holder upon demand from the account holder. Plaintiff further alleges that Berkeley Federal Savings Bank merged into Ocwen Federal Bank FSB, a wholly owned subsidiary of OFC, such that Ocwen Federal Bank FSB became the successor in interest to Berkeley Federal Savings Bank. Id. at ¶ 14. Even assuming, without deciding, that Plaintiff adequately pleaded a breach of contract claim with respect to Berkeley Federal Savings Bank, and with respect to its successor in interest, Ocwen Federal Bank, Plaintiff has not pleaded factual allegations sufficient to state a claim against OFC.

Plaintiff prosecutes this action against OFC, the parent corporation of Ocwen Federal Bank. In general, a parent corporation is not liable for the acts of its subsidiaries; further, "[l]iability will not be imposed on the parent corporation merely because of its ownership of the subsidiary nor because directors of the parent corporation also serve as directors of the subsidiary."

Portfolio Fin. Serv. Co. v. Sharemax.com, Inc., 334 F. Supp. 2d 620, 626 (D.N.J. 2004) (quoting, *inter alia*, Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001)); see also New Jersey Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 164 (N.J. 1983) ("Even in the case of a parent corporation and its wholly-owned subsidiary, limited liability normally will not be abrogated."). Nonetheless, courts may sometimes "pierce the veil" to hold a parent liable. See Portfolio, 334 F. Supp. 2d at 626 (noting that "veil-piercing is proper when a subsidiary is an alter ego or instrumentality of the parent corporation," or when "the parent so dominated the subsidiary that it had no separate existence"); Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002) (explaining that "[i]n order to state a claim for piercing the corporate veil under New Jersey law, a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation; and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law," and listing factors considered in veil-piercing analysis).

Here, Plaintiff has not alleged factual allegations sufficient to support a plausible claim that OFC is liable for its subsidiary's contractual obligations. See Premier Pork LLC v. Westin, Inc., No. 07-1661, 2008 WL 724352, at **5-6 (D.N.J. Mar. 17, 2008) (dismissing breach of contract claims against parent based on contractual obligations of subsidiary where, as here, "Amended Complaint [was] totally devoid of allegations relating to the dominance of [the subsidiary by the parent]" and thus "Plaintiff ha[d] failed to raise his right to pierce that company's corporate veil above the speculative level"). Because Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on the existence of a valid contract, Count Three of the Amended Complaint suffers from the same pleading deficiency. See Pickett v. Lloyd's, 621 A.2d 445, 467 (N.J. 1993) (noting that covenant of good faith and fair dealing in performance and enforcement

is implied in every contract).

Similarly, OFC argues that Plaintiff's conversion claim must fail because "Plaintiff fails to plead that OFC ever exercised dominion and control over the Certificate of Deposit." Def.'s Br. 2; see Wiatt v. Winston & Strawn LLP, No. 10-6608, 2011 WL 2559567, at *15 (D.N.J. June 27, 2011) (quoting Advanced Enters. Recycling, Inc. v. Bercaw, 869 A.2d 468 (N.J. Super. Ct. App. Div. 2005)) (describing conversion as "the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights"). The Amended Complaint asserts that "[b]oth Marathon and Ocwen intentionally exercised dominion and control over Plaintiff's CD in that each took possession of the CD Account as described above." Am. Compl. ¶ 62. OFC is correct, however, that Plaintiff's use of the name "Ocwen" is unclear; Plaintiff has only alleged that Ocwen Federal Bank, the subsidiary of OFC, had possession of the CD account. Id. at ¶¶ 43, 47-48. Plaintiff has not alleged sufficient facts to support the allegation that OFC is liable for conversion as Ocwen Federal Bank's parent.

In sum, in Counts One, Two and Three, Plaintiff has not pleaded factual allegations sufficient to state a plausible claim for relief against Ocwen Federal Bank's parent, OFC. Therefore, the Court will dismiss these three counts without prejudice.

### C.  NJCFA Claim

OFC argues that Plaintiff does not have a cause of action under the NJCFA because Plaintiff fails to allege any misrepresentation or knowing omission by OFC, the Amended Complaint does not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), and because the allegations at issue do not deal with the advertisement or sale of merchandise. Def.'s Br. 14-17. Plaintiff responds by conceding that "Plaintiff's CFA claim is not predicated on misrepresentations made by Defendants." Opp. Br. 9. Rather, Plaintiff argues that her claim falls

within the ambit of the NJCFA because:

> Defendants' failure to maintain records of the Account, failure to inform Plaintiff of the status or whereabouts of the Account, failure to sufficiently investigate what actually happened to the Account, failure to cooperate with Plaintiff in locating the account, failure to provide any evidence of a 'paper trail' of the Account, and general disavowance of any knowledge or responsibility for the Account all constitutes a quintessential "unconscionable business practice" under the CFA.

Opp. Br. 10-11.

The NJCFA provides a cause of action against a defendant who commits an unlawful practice that causes an ascertainable loss to the plaintiff. Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J. 2007). An unlawful practice is defined under the NJCFA as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2.

"NJCFA claims need not allege an affirmative fraudulent statement, representation or omission by the defendant," and claims for unconscionable commercial practices are "distinct from NJCFA claims sounding in fraud." Katz v. Live Nation, Inc., No. 09-3740, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010). However, "[t]he capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." Fenwick v. Kay Am. Jeep, Inc., 371 A.2d 13, 16 (N.J. 1977) (failure to disclose bona fide odometer reading in ads for used automobiles could constitute unconscionable commercial practice even absent showing of intent to mislead); see also Gonzalez v. Wilshire Credit Corp., 25 A.3d 1103, 1114-15 (N.J. 2011) (post-foreclosure-judgement forbearance agreements that "memorialized predatory and fraudulent lending

practices" constituted unconscionable commercial practice in violation of NJCFA); Kugler v. Romain, 279, A.2d 640, 652 (N.J. 1971) (holding, prior to amendment of NJCFA to include "unconscionable commercial practice," that charging grossly excessive price, where goods have little or no value to consumer for purpose for which he was persuaded to buy them, was unconscionable and actionable under the NJCFA as it "puts a badge of fraud on the transaction").

On the other hand, conduct that is merely unfair or that causes consumer dissatisfaction is not necessarily an unconscionable commercial practice. "[A] breach of warranty, or any breach of contract, is not per se unfair or unconscionable," even though "any breach of warranty or contract is unfair to the non-breaching party." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994). Thus, "substantial aggravating circumstances must be present in addition to the breach" in order to state a claim under the NJCFA. Id.; see also Venditto v. Vivint, Inc., No. 14-4357, 2015 WL 926203, at *13 (D.N.J. Mar. 2, 2015) (citing Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 655 A.2d 417, 430 (N.J. 1995)) (dismissing NJCFA claim as Plaintiff failed to allege that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer"); Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998) (affirming dismissal of NJCFA claim because "denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice," where "the record [was] devoid of evidence that [defendant] committed fraud, made misrepresentations, or misled the [plaintiffs]").

In the instant case, Plaintiff has not alleged any facts suggesting that OFC committed an unconscionable commercial practice under the NJCFA. Plaintiff's only accusations are that OFC failed to monitor the Account or assist Plaintiff in locating the funds in the Account. Though Plaintiff need not specifically allege that OFC made an affirmative fraudulent statement or

omission, Plaintiff's claims are devoid of any indication that OFC's conduct was misleading, or that she was misled at all. Plaintiff's claim is similar to those that were dismissed in the cases cited above because they lacked any indication of deception or other aggravating circumstances that would place the business practice "outside the norm of reasonable business practice in that it will victimize the average consumer." See Turf Lawnmower, 655 A.2d at 430. Accordingly, the Court will dismiss the NJCFA claim with prejudice.[2]

## IV. CONCLUSION

Based on the reasons set forth above, Defendant OFC's motion to dismiss is granted. Counts One, Two and Three of the Amended Complaint are dismissed as to OFC without prejudice. Plaintiff will have thirty days to amend her pleading with respect to Counts One, Two and Three. Count Four of the Amended Complaint is dismissed as to OFC with prejudice. An appropriate order accompanies this Opinion.

Dated: March 18, 2015

_____
**CLAIRE C. CECCHI, U.S.D.J.**

---

[2] Because the Court dismisses Plaintiff's claims on other grounds, the Court does not reach whether the claims are time-barred or barred by the "economic loss doctrine."